**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**LAGRONE CONSTRUCTION, LLC**                                            **PLAINTIFF**

**V.**                                   **NO. 3:13-CV-224-DMB-JMV**

**LANDMARK, LLC, et al.**                                                         **DEFENDANTS**

**OPINION AND ORDER**

This action arises from disputes associated with a construction project in Oxford, Mississippi. The general contractor on the project, Apex Construction Services, LLC ("Apex"), has filed a motion to stay the proceedings and compel arbitration or, in the alternative, to dismiss the case for improper venue, based on an arbitration clause in the subcontract it entered with Landmark, LLC, and Landmark Drywall & Painting, LLC (collectively, "Landmark"). Apex requests that this Court enforce the arbitration clause against not only Landmark but also Landmark's subcontractor, Lagrone Construction, LLC ("Lagrone"), though Lagrone is not a party to the subcontract. For the reasons below, the Court finds that the claims between Apex and Landmark are subject to arbitration; the claims asserted by and against Lagrone are not bound by the arbitration clause; the proceedings should not be stayed as to the claims by and against Lagrone but, as to the claims between Apex and Landmark, should be stayed pending the outcome of arbitration; and dismissal based on improper venue is inappropriate.

**I.**      **Facts and Procedural History**

Apex was the general contractor on the construction project in Oxford, Mississippi, known as Grove Hill ("Project"). Pursuant to a subcontract agreement dated April 30, 2013, Apex hired Landmark as a framing subcontractor on the Project. The subcontract included a dispute resolution clause, which provided in relevant part:

> 15.1 The first step in the resolution of any dispute between Subcontractor and Contractor shall be a meeting to discuss and attempt to resolve the dispute. If both parties agree, the dispute can be settled by agreement. If not, the next step is consideration of mediation. If both parties agree, the dispute will be submitted to mediation under paragraph 15.2.3. If the dispute is not resolved by agreement or by mediation, then the dispute shall be resolved as follows:
> 15.1.1 Disputes solely between Contractor and Subcontractor shall be resolved by arbitration.
> 15.1.2 Disputes between the Contractor, Subcontractor, or other Subcontractors, sub-subcontractors and suppliers shall be resolved by arbitration.
>
> * * *
>
> 15.2 With respect to any dispute arising out of or related to this Subcontract, the following provisions shall apply:
> 15.2.1 <u>Choice of Law</u>. The laws of the State of Tennessee shall govern this Subcontract.
> 15.2.2 <u>Choice of Forum</u>. The parties specifically submit to the jurisdiction of the Chancery Court for Davidson County, Tennessee, for bringing any litigation arising under this agreement. Apex Construction Services, LLC and Landmark Framing waive any objections to personal jurisdiction. Landmark Framing agrees not to bring any suit against Apex Construction Services, LLC in a court other than the Chancery Court of Davidson County, Tennessee.

Subcontract Agreement [10-1] at 12.

After contracting with Apex, Landmark hired Lagrone to perform framing work on the Project. Landmark and Lagrone did not enter a written contract for the framing work. In May 2013, a dispute arose between Landmark and Lagrone concerning payment for services rendered on the Project. As a result, Lagrone filed a complaint in the Circuit Court of Lafayette County, Mississippi, against Landmark for breach of an oral contract, unjust enrichment, or alternatively for a suit on an open account. *See* State Court Compl. [8-1]. Lagrone alleges that it had an oral contract with Landmark to perform framing work on the Project; that it satisfied its obligations under the oral contract; and that Landmark failed to pay the agreed upon amount for the work performed. *Id.* at 3. Lagrone seeks $35,108.94 in actual damages, unspecified consequential and punitive damages, prejudgment interest, post judgment interest, attorney's fees, and costs. *Id*.

2

On September 4, 2013, Landmark removed the case to this Court based on federal diversity of citizenship. *See* Notice of Removal [1]. The next day, Landmark filed a third party complaint against Apex seeking indemnification in the event it is found liable to Lagrone and seeking payment for any unpaid invoices owed by Apex. *See* Third Party Complaint [4] at 2-3. On October 29, 2013, Apex filed an answer to the third party complaint and counterclaims against Landmark for breach of contract, breach of express warranty, breach of implied warranties, negligence, and attorney's fees. Apex Answer [10] at 11-15. Apex also filed cross-claims against Lagrone for breach of implied warranties, negligence, and attorney's fees. *Id*. at 13-15. On November 18, 2013, Landmark filed an answer to the counterclaims and asserted a cross-claim against Lagrone for indemnification if it is found liable to Apex because, Landmark argues, any liability would stem from Lagrone's work on the Project. Landmark Answer [13] at 9-10.

On November 20, 2013, Apex filed the instant motion to stay and compel arbitration or, in the alternative, motion to dismiss. Mot. [14]. Landmark and Lagrone have responded in opposition to Apex's motion. The motion has been fully briefed, and this matter is now ripe for decision.

## II.     Jurisdiction

Under 28 U.S.C. § 1441(a), any civil lawsuit filed in state court involving matters over which federal district courts have original jurisdiction may be removed to the district court embracing the area where the state action is pending. Federal district courts have original subject matter jurisdiction over all civil cases where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. *See id*. § 1332(a). Landmark removed Lagrone's complaint to this Court based on federal diversity of citizenship.

3

Federal diversity is also the basis for jurisdiction over Landmark's third party complaint, Landmark's cross-claim, and Apex's counterclaims and cross-claims. *See* Third Party Complaint [4] at 2; Apex Answer [10] at 9; Landmark Answer [13] at 8.

"The party seeking to invoke the jurisdiction of the federal court has the burden of proving that jurisdiction exists." *Aetna Cas. & Sur. Co. v. Hillman,* 796 F.2d 770, 775 (5th Cir. 1986) (citations omitted). *Lawson v. Chrysler, LLC*, No. 4:08-cv-19, 2009 WL 961226, at *3 (S.D. Miss. Apr. 7, 2009). Landmark invoked the jurisdiction of this Court when it removed the case from state court and when it filed a third party complaint and cross-claim. Apex invoked the jurisdiction of this Court when it filed counterclaims against Landmark and cross-claims against Lagrone. Because Landmark and Apex are the parties invoking federal jurisdiction, they bear the burden of proving that jurisdiction exists.

After the motion was briefed by the parties, the Court issued a show cause order directing Landmark and Apex, the parties invoking federal jurisdiction, to explain why the case should not be remanded and/or dismissed for lack of diversity under § 1332. Order [27]. Specifically, the Court found that the jurisdictional allegations in their pleadings were defective because they did not include the names and citizenship of all members of Apex; Lagrone; Landmark, LLC; and Landmark Drywall & Painting, LLC. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all of its members.") (citations omitted). On July 17, 2014, Landmark and Apex filed a joint response to the show cause order. In their joint response, Landmark and Apex stated that during the relevant time period: (1) the sole member of Landmark, LLC, was and is a resident citizen of Georgia; (2) the sole member of Landmark Drywall & Painting, LLC, was and is a resident citizen of Georgia; (3) the sole member of Lagrone was and is a resident citizen of Mississippi; and (4) the

two members of Apex were resident citizens of Tennessee.[1] *See* Joint Response [28] at 2-3. As proof of diversity, Landmark and Apex submitted affidavits from the members. *See* Docs. [28-1][28-2][28-3][28-4]. However, in their respective affidavits, the members of Lagrone, Landmark, LLC, and Landmark Drywall & Painting, LLC, testified as to their residency rather than citizenship.[2] *See* Docs. [28-1][28-2][28-3].

"For purposes of diversity jurisdiction, the domicile of the parties, as opposed to their residence, is the key." *Combee v. Shell Oil Co.,* 615 F.2d 698, 700 (5th Cir. 1980). "Evidence of a person's place of residence, however, is prima facie proof of his domicile." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (citing *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007)). *See Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile …"). Therefore, on July 30, 2014, the Court entered a second show cause order directing Landmark and Apex to submit sufficient evidence of the citizenship, rather than residency, of the members of Lagrone, Landmark, LLC, and Landmark Drywall & Painting, LLC. In response, Landmark and Apex submitted competent proof that, during the relevant time periods, Lagrone was a citizen of Mississippi; Landmark, LLC, was a citizen of Georgia; and Landmark Drywall & Painting, LLC, was a citizen of Georgia. At the time this lawsuit commenced and at all times thereafter, Apex was a citizen of Tennessee. *See* Doc. [28-4]. Complete diversity, therefore, exists between the parties. Because the parties are

---

[1] At the time this lawsuit commenced, Apex had two members who were both resident citizens of Tennessee; at present, however, Apex has only one member who is a resident citizen of Tennessee. *See* Joint Response [28] at 2-3; Doc. [28-4] at 2.

[2] The sole member of Landmark, LLC, and the sole member of Landmark Drywall & Painting, LLC, stated that they were and are currently <u>residents</u> of Georgia. Docs. [28-1][28-2]. The sole member of Lagrone stated in his affidavit that his home is in Oxford, Mississippi, and that he has lived in Oxford for 44 years. Doc. [28-3] at 1.

diverse and the amount in controversy has been met, this Court has jurisdiction over the case based on federal diversity of citizenship. *See* 28 U.S.C. § 1332(a).

**III. Discussion**

At issue is whether the arbitration clause in the subcontract between Apex and Landmark can be enforced against all parties in this lawsuit, including Lagrone, who is not a party to the subcontract. In its motion, Apex argues that the claims between it and Landmark are subject to the arbitration clause in the subcontract and that, because the claims between Lagrone and Landmark arise from the subcontract, they too are subject to arbitration. As to the cross-claims Apex asserts against Lagrone, Apex argues that equity requires them to be arbitrated as well. Apex requests that the Court stay the proceedings, enforce the arbitration clause, and refer all claims in this case to arbitration. In the event the Court finds that all claims are not subject to arbitration, Apex requests that Lagrone's complaint and Landmark's third party complaint be dismissed based on improper venue.

Landmark argues in response that because there is no arbitration agreement between it and Lagrone, the claims between them must proceed in this Court. Landmark argues, however, that allowing those claims to proceed but submitting the remaining claims to arbitration would be inequitable. Landmark contends that neither arbitration nor dismissal is appropriate because allowing claims that arise from the same set of facts to proceed in different venues could lead to inconsistent results, which would not be in the interest of justice or equity. For these reasons, Landmark requests that all claims proceed in this Court. Alternatively, Landmark requests that the subcontract be voided in its entirety based on substantive unconscionability.

In response to Apex's motion, Lagrone argues that arbitration is not proper on the claims between it and Landmark because Lagrone never agreed to arbitrate those claims, nor did it sign

the subcontract. Lagrone also argues that it did not enter an arbitration agreement with Apex; thus, Lagrone cannot be forced to arbitrate the cross-claims asserted against it by Apex or forced to bring suit in Tennessee state court.

A. The Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate in a contract that involves interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

There is no dispute that the subcontract between Apex and Landmark is a written agreement that involves interstate commerce. In accordance with the FAA, the Fifth Circuit directs courts to conduct a two-part inquiry to determine whether parties should be compelled to arbitrate a dispute. *Bailey*, 364 F.3d at 263. As to the first part, "the court must determine whether the parties agreed to arbitrate the dispute." *Id*. To make this determination, the court must ask: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (quoting *Sherer v. Green Tree Servicing, LLC,* 548 F.3d 379, 381 (5th Cir. 2008)). If the parties agreed to arbitrate the dispute, the court moves to the second part of the inquiry, which is to consider "whether any federal statute or policy renders the claims nonarbitrable." *Bailey*, 364 F.3d at 263; *Jones*, 583 F.3d at 234. No party argues that a federal statute or policy bars arbitration of its claims. As such, this Court need only resolve whether the

parties agreed to arbitrate their dispute. *Jones*, 548 F.3d at 234 ("Neither party contends that a federal statute or policy would bar arbitration; accordingly, our analysis is restricted to the first step.").

*1. Which State's Law Governs the Subcontract?*

When "determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement." *Bailey*, 364 F.3d at 264. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting "courts generally … should apply ordinary state-law principles that govern the formation of contracts"). The subcontract agreement between Apex and Landmark contains a choice of law provision which states that Tennessee law governs the contract. *See* Subcontract Agreement [10-1] at 12. Despite this choice of law provision, Apex and Landmark cite Mississippi law, rather than Tennessee law, to support their arguments regarding the arbitration clause.

Jurisdiction in this case is based on diversity of citizenship; therefore, this Court must apply Mississippi's choice of law rules to determine which state's law governs the subcontract agreement. *Griffin v. McCoach*, 313 U.S. 498, 503 (1941) (stating "federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states in which they sit"); *Williamson Pounders Architects PC v. Tunica Cnty., Miss.*, 597 F.3d 292, 295 (5th Cir. 2010) ("A district court hearing a diversity suit is to apply the choice-of-law rules of the state in which the action is brought.") (citation omitted); *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010) ("When sitting in diversity, we apply the choice-of-law rules of the forum state—here, Mississippi—to determine which state's substantive law should apply.") (citation omitted).

The choice of law test under Mississippi law "consists of three steps: '(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws.'" *Ellis*, 625 F.3d at 225-26 (quoting *Hartford Underwriters Ins. Co. v. Found. Health Servs.*, 524 F.3d 588, 593 (5th Cir. 2008)); *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433-34 (Miss. 2006). The laws at issue in this case relate to interpreting a contractual agreement; therefore, they are substantive. *Goodwin*, 920 So. 2d at 433 ("The present case … deals with contract construction, and we have held that contract construction is substantive.") (citations omitted). Since the parties assert contractual claims, the Court must consult the Restatement (Second) of Conflict of Laws. According to § 187 of the Restatement, when a contract contains a choice of law provision, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) applying the chosen state's law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187 (1971).

Tennessee, the chosen state, has a substantial relationship to Apex, one of the parties to the subcontract agreement. Apex is a limited liability company whose sole member is a resident citizen of Tennessee.[3] In addition, the parties do not identify a fundamental policy of Mississippi

---

[3] Comment f to the Restatement (Second) Conflicts of Laws § 187 provides that the chosen state law has a substantial relationship to the parties or the contract when the chosen state is "where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business." *See St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans*, 418 F. App'x 305, 309 (5th Cir. 2011) ("New

that the application of Tennessee law would violate. *See ABS Servs., Inc. v. New York Marine & Gen. Ins. Co.,* 524 F. App'x 946, 950 (5th Cir. 2013) (finding Georgia law applicable because Georgia had substantial relationship with parties and transaction, and parties did not identify any "fundamental policy of Mississippi that the application of Georgia law would violate"). This Court, therefore, will apply Tennessee contract law to determine whether there is a valid arbitration agreement.

### 2. *Did Apex and Landmark agree to arbitrate the dispute?*

Landmark argues that the arbitration agreement cannot be enforced because the subcontract is substantively unconscionable. In this regard, Landmark challenges Article 15.2.7 of the subcontract, which provides:

> <u>Change of Forum and Change of Law</u>. If, at any time, after suit is initiated by either party but prior to commencement of trial, Contractor becomes involved in litigation with another party or parties involving questions of fact or law common to the dispute between Contractor and Subcontractor to the extent that (a) in Subcontractor's absence complete relief cannot be accorded among those already parties or (b) disposition of such other actions may, as a practical matter,
>
> (i) impair or impede Contractor's or Subcontractor's ability to fully protect their interest in either proceeding, or
>
> (ii) expose Contractor or Subcontractor to a risk of incurring multiple or otherwise inconsistent obligations,
>
> Subcontractor agrees that he may be joined by Contractor in such other litigation or arbitration proceeding in the court and under the laws of the jurisdiction of the other litigation or arbitration for a complete resolution of all disputes and controversies arising under the Subcontract and that, upon such joinder, the question pending in the Chancery Court of Davidson County, Tennessee, will be dismissed.

Subcontract Agreement [10-1] at 13.

---

York has a substantial relationship to the parties because plaintiff insurer American Home Insurance Company is a New York corporation.) (citation omitted); *Williamson Pounders Architects, P.C. v. Tunica Cnty., Miss.*, No. 2:06-cv-206, 2008 WL 2856826, at *4 (N.D. Miss. July 21, 2008) (Mills, J.) ("It is not unreasonable for a party to contractually obligate another to litigate under the laws of its principal place of business.").

Landmark asserts that Article 15.2.7 allows only Apex to avoid arbitration if there is a previously pending judicial matter. It contends that, because it cannot avoid arbitration under the same circumstances as Apex, the subcontract is substantively unconscionable and must be voided. In response, Apex argues that it does not seek to enforce Article 15.2.7 and that the scenario presented in that portion of the subcontract is inapplicable to this case. Nevertheless, Apex argues that the subcontract is not unconscionable because mutuality of obligation is not required for the subcontract to be valid or for the arbitration clause to be enforced.

The Tennessee Supreme Court has stated that a contract's "[e]nforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citations omitted). *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 976 (6th Cir. 2007). Under Tennessee law, a contract is unconscionable when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984) (citations omitted). "A contract is substantively unconscionable if the terms of the contract are unreasonably favorable to the other party." *McGregor v. Christian Care Ctr. of Springfield, LLC*, No. M2009-01008-COA-R3-CV, 2010 WL 1730131, at *5 (Tenn. Ct. App. Apr. 29, 2010) (citing *Philpot v. Tenn. Health Mgmt.,* 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007)). *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 504 (6th Cir. 2004) (stating that contracts are substantively unconscionable if their "terms are beyond the reasonable expectations of an ordinary person, or oppressive …") (internal citations and quotation marks omitted). "If a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to

enforce the contract, or may enforce the remainder of the contract without the unconscionable term." *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) (citations omitted). "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." *McGregor*, 2010 WL 1730131, at *5 (quoting *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004)).

The Court has reviewed the subcontract, specifically Article 15.2.7, and finds that it is not unconscionable. Although Landmark argues that the subcontract allows only Apex to circumvent arbitration, both parties have a duty to arbitrate their claims. The language in Article 15.2.7 suggests that both Apex and Landmark have the option to file suit regarding claims arising from or related to the Project. *See* Subcontract Agreement [10-1] at 3 ("[i]f, at any time, after suit is initiated by <u>either party</u> but prior to commencement of trial …") (emphasis added). It appears that Landmark would only be required to join a pending proceeding in which Apex is involved if complete relief could not be awarded, a party's rights would be compromised, or a party would be exposed to certain risk in Landmark's absence from the proceeding.

In *Taylor v. Butler*, the Tennessee Supreme Court addressed whether an arbitration clause in a consumer contract was unconscionable where it reserved only the merchant's right to pursue claims in court and restricted the consumer to arbitration. 142 S.W.3d at 285. After considering the relative positions of the parties, the court determined that the contract was unreasonably favorable to the merchant and oppressive to the consumer. *Id*. at 286. For those reasons, it concluded that the arbitration clause was unconscionable and, therefore, unenforceable. *Id*. at 280, 286-87.

Unlike the contract in *Taylor*, the contract in this case is between business entities rather than a merchant and consumer. Landmark and Apex are limited liability companies who entered

12

a business agreement to perform contract work on a construction project. Since Landmark does not argue otherwise, it appears that the parties had equal bargaining power to negotiate the terms of the subcontract. *See Trinity Indus. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) ("Where the parties possess equal bargaining power[,] the courts are unlikely to find that their negotiations resulted in an unconscionable bargain …") (citations omitted); *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (contracting party is presumed to know contents of contracts he signs). Further, as noted above, the subcontract requires both parties to arbitrate their claims. One party is not allowed to avoid arbitration altogether and proceed to court while the other is restricted to arbitration.[4] Accordingly, the Court finds that Landmark's argument that the subcontract is substantively unconscionable lacks merit.

### 3. Is the dispute within the scope of the arbitration agreement?

Apex and Landmark do not argue that their dispute is outside the scope of the arbitration agreement and rightfully so. Their dispute clearly falls within the scope of the arbitration agreement because both parties assert claims against each other arising from or relating to the subcontract. In its third party complaint, Landmark seeks indemnity from Apex for claims related to services rendered on the Project. In its counter-complaint, Apex asserts contractual claims against Landmark regarding its work on the Project. Because a valid arbitration agreement exists and the parties' dispute is within its scope, the Court finds that Apex and Landmark agreed to arbitrate their dispute in this case.

---

[4] *But cf. Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 889 (Tenn. 2007) ("A contract may be unconscionable if the provisions are so one-sided that the contracting party is denied an opportunity for a meaningful choice.") (citations omitted).

*4. Does equity require all claims to proceed in this Court?*

Another argument Landmark advances to support its request to retain all claims in this Court is that it would be inequitable to allow Lagrone's complaint to proceed in this Court and force the remaining claims to be arbitrated. Landmark does not cite any law in support of this argument, but rather contends that allowing the claims in this case to proceed in different forums would not be in the interest of equity or judicial economy and could lead to inconsistent results. Although Landmark argues that equity requires all claims to proceed in this venue, this Court does not consider fear of inconsistent rulings as adequate grounds for release from an otherwise binding arbitration agreement. "[T]he possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 203 (6th Cir. 2001) (citations omitted).

Moreover, Landmark fails to show that Lagrone is an indispensable party to the arbitration agreement. *See Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006) ("The threat of piecemeal, inconsistent litigation of claims and issues … is insufficiently prejudicial to render a party indispensable … given the oft-stated preference for arbitration under the FAA.") (citations omitted); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 446 (2d Cir. 1995) (stating that "strong bias in favor or arbitration" outweighs any prejudice from piecemeal litigation). The claims between Landmark and Lagrone arise from Lagrone's work on the Project, whereas the claims between Apex and Landmark arise from their respective responsibilities under the subcontract. As Landmark notes, its claims against Apex only exist if it is found liable to Lagrone. In contrast, Lagrone's claims exist independent of any ruling on the claims between Landmark and Apex.[5] Indeed, the basis of Lagrone's complaint is an alleged

---

[5] This case does not present a situation where the plaintiff's claims are contingent upon the outcome of arbitration. *See Hofer Builders, Inc. v. Fidelity and Deposit Co. of Maryland*, No. 3:13-cv-223-M-V, 2014 WL 3429497, at *2

oral contract it had with Landmark. Lagrone's claims can therefore be decided separately from the other claims in this case. Allowing the parties' claims to proceed in different forums may be an inconvenience, but is supported by the strong policy favoring arbitration and does not violate judicial economy or the rules of equity. *See Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 20 (1983) (stating that potential for plaintiff resolving its disputes in two forums when one party to underlying dispute was not party to arbitration agreement, "occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original). Landmark's argument that equity requires all claims to proceed in this Court, therefore, fails.

Based on the Court's finding that Apex and Landmark agreed to arbitrate their dispute and because they do not argue that a federal statute or policy bars the dispute from arbitration, Apex and Landmark should be compelled to arbitration. *See Bailey*, 364 F.3d at 263.

B. <u>Is Lagrone Bound by the Subcontract's Arbitration Clause?</u>

In its motion, Apex also argues that Lagrone should be compelled to arbitrate its claims. Under Article 15.1.2 of the subcontract, "[d]isputes between the Contractor, Subcontractor, and other Subcontractors, sub-subcontractors and suppliers shall be resolved by arbitration." Subcontract Agreement [10-1] at 12. Lagrone contends that the subcontract does not apply to claims between subcontractors, maintaining that its claims arise from an oral contract it had with Landmark regarding the Project. To resolve the issue of whether Lagrone can be bound by the terms of the subcontract between Apex and Landmark, the Court must look to state law.

It is well established under Tennessee law that arbitration clauses are not binding on third parties who are not parties to the contract. *Cocke Cnty. Bd. of Highway Comm'rs v. Newport*

---

(N.D. Miss. July 11, 2014) (Mills, J.) (staying litigation because "the fact remains that Hofer may only recover against Fidelity if it demonstrates that Apex is liable under the subcontract agreement, and this issue is clearly referable to arbitration").

*Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) ("However, arbitration clauses are not binding on third parties who are not parties to the contract."); *Jackson v. Chambers*, 510 S.W.2d 74, 77 (Tenn. 1974) ("The defendant … was not a party to the lease contract and was not bound by the agreement to arbitrate."); *River Links at Deer Creek, LLC v. Melz*, 108 S.W.3d 855, 859-60 (Tenn. Ct. App. 2002) ("A party cannot be compelled to arbitrate in the absence of a contractual obligation."). However, an arbitration clause in a contract is enforceable against a third party who is an intended beneficiary of the contract and seeks to enforce its rights under the contract. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 620 (Tenn. 2004). Third party beneficiaries are not bound to an arbitration clause if they sue on legal theories that do not seek to enforce terms of the contract. *Id.* "Third parties are intended contractual beneficiaries if '(a) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party.'" *Harris v. LNV Corp.*, No. 3-12-0552, 2014 WL 3015293, at *10 (M.D. Tenn. July 2, 2014) (Campbell, J.) (quoting *Benton*, 137 S.W.3d at 618). *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001) (defining intended and incidental third party beneficiaries).

Based on the current record, Lagrone is not a third party beneficiary to the subcontract agreement between Apex and Landmark. The subcontract indicates that Apex and Landmark "otherwise agreed" that the subcontract was not intended to create third party beneficiaries. *See* Subcontract Agreement [10-1] at 14 ("This Subcontract does not create, nor does any course of conduct between the Contractor and Subcontractor, create, any contractual relationship or benefit to any third party claimant not a party to it."). Additionally, recognition of Lagrone's right to

performance is not necessary to effectuate the parties' intent for the subcontract, and no terms or circumstances indicate that performance of a promise will or is intended to satisfy an obligation owed to Lagrone. Apex and Landmark entered a subcontract agreement to perform work on the Project. Landmark, in turn, hired Lagrone to perform framing work. It does not appear that Apex or Landmark intended for Lagrone to benefit from the subcontract. Therefore, the Court finds that Lagrone is not a third party beneficiary, and the arbitration clause is inapplicable to its claims. Because the subcontract does not apply to Lagrone, Apex's request to compel arbitration and/or to dismiss Lagrone's claims for improper venue based on a provision in the subcontract must be denied.

### C. Request to Stay Proceedings Pending Outcome of Arbitration

Under Section 3 of the FAA, "if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration[,] … the court … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…." 9 U.S.C. § 3.

Apex seeks a stay of the proceedings in this Court pending the outcome of arbitration. The Fifth Circuit has stated that "proceedings against parties and non-parties to the arbitration agreement are stayed pending the outcome of arbitration, when the action against the non-party is dependent upon interpretation of the underlying contract." *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). In the present matter, the claims between Lagrone and Landmark are not dependent upon interpretation of the subcontract between Apex and Landmark. Lagrone filed its complaint based on an alleged oral contract it had with Landmark; thus, these claims are independent from the subcontract. Likewise, Apex's cross-claims against Lagrone arise from the

work Lagrone performed on the Project and are, therefore, not dependent upon interpretation of the subcontract. As such, a stay of the proceedings as to the claims by and against Lagrone is not required, and the motion to stay will be denied with respect to them.

Because the Court has found that the claims between Apex and Landmark are subject to arbitration, however, the proceedings will be stayed as to them pending arbitration's outcome.

## IV. Conclusion

In light of the above analysis, the Court finds that Apex's Motion to Stay and Compel Arbitration or, in the alternative, Motion to Dismiss is granted in part and denied in part. A valid agreement to arbitrate exists between Landmark and Apex, and the claims they assert against each other fall within the scope of the arbitration agreement. Pursuant to the FAA, the motion to compel arbitration is granted as to the claims between Landmark and Apex.

As to the remaining claims, however, the motion to compel arbitration is denied. Lagrone is neither a party nor third party beneficiary to the subcontract and cannot be bound by the arbitration clause. Moreover, Lagrone cannot be bound by the portion of the subcontract giving exclusive jurisdiction over lawsuits to the Chancery Court of Davidson County, Tennessee. For this reason, the motion to dismiss for improper venue is denied.

Further, because the claims by and against Lagrone are not contingent upon the outcome of arbitration between Apex and Landmark, a stay of the proceedings is unnecessary as to them. A stay of proceedings is granted, however, as to the claims between Apex and Landmark pending the outcome of arbitration.

Finally, in accordance with the Court's finding that Apex and Landmark have submitted competent evidence establishing complete diversity under 28 U.S.C. § 1332, Landmark is hereby granted leave to amend only the jurisdictional allegations regarding diversity of the parties in the

Notice of Removal and with respect to the claims it asserts against Lagrone. In addition, Apex is granted leave to amend only the jurisdictional allegations regarding diversity of the parties in its Cross-Complaint against Lagrone. Such amendments shall be completed within fourteen (14) days of the entry of this order.

      SO ORDERED, this the 22nd day of August, 2014.

                              **/s/Debra M. Brown**
                              **UNITED STATES DISTRICT JUDGE**